## ROSELLE, *Appellant*, v. BECKEMEIR.

### Division One, May 26, 1896.

1. **Contract**: LOTTERY, RECOVERY OF PROCEEDS OF. Several parties in Missouri agreed to "pool" their tickets in the Louisiana lottery; the tickets drew several prizes; one of the parties (plaintiff in this case) obtained a draft for the whole prize money: he indorsed the draft to a bank upon an agreement that it should (for a consideration) collect the proceeds, pay part thereof to plaintiff and another specified part to Beckemeir, who was a party to that agreement: *held*, that the illegality of the original transaction was no bar to the recovery by Beckemeir of his part of the proceeds of the draft.

2. ———: ———: TRUST: VALUABLE CONSIDERATION. Such an agreement by a bank to collect proceeds, and to pay ascertained sums thereof to several parties, impresses a trust on those proceeds when collected, for the benefit of the promisees; and it is a contract, binding on all the parties to it, and is founded on a valuable consideration.

3. ———: PRIOR ILLEGALITY. A party seeking to recover on a contract can not be defeated from recovery by reason of illegality in his prior conduct, when he can make out his case independently of his illegal conduct.

4. ———: ———. Courts of justice will usually leave those who have engaged in illegal transactions to work out their own equities.

5. **Supreme Court Practice**: HARMLESS ERROR. A judgment will not be reversed for an error which is shown to have been harmless.

6. ———: ESTOPPEL. Where both parties in the trial court treat the cause as one in equity, the supreme court will so treat it without investigation of its nature, as parties are generally bound on appeal by the positions they have taken in the trial court.

7. ———: EQUITY. In equity cases the appellate court reviews the facts as well as the law.

*Appeal from Carroll Circuit Court.*—Hon. W. W. Rucker, Judge.

Affirmed.

*Hale & Son* and *J. W. Sebree* for appellant.

(1) The dealing in lottery tickets has been outlawed by the laws of the United States and by the postoffice department as being against good morals and public policy generally. *Ruhe v. Buck*, 124 Mo. 178; 3 Am. and Eng. Encyclopedia of Law, p. 556. (2) There was no evidence whatever that the tickets were jointly purchased in Louisiana; the evidence shows separate and independent purchases. (3) The evidence of a purchase of an interest in the tickets in Missouri was at variance with the case made in interpleader's petition, which alleged a joint purchase in Louisiana. *Currier v. Low*, 32 Mo. 203; *Bank v. Armstrong*, 62 Mo. 65. Where there is no evidence to support a finding, this court will reverse, even in actions at law. *Harlan v. St. Louis, etc.*, 65 Mo. 22; *Hunt v. Railroad*, 89 Mo. 607. (4) The evidence in this case shows clearly that the only claim interpleader has to any portion of this prize money grows out of an alleged agreement made at Norborne, Missouri, to form a club—pool their issues—founded solely upon the contingency or chance that some one or more of their tickets would draw a prize in the Louisiana lottery, and divide the spoils of their unholy alliance made in violation of the constitution and laws of the state. "No court of justice can in its nature be made the handmaid of iniquity." *Sprague v. Rooney*, 104 Mo. 358; *Tod v. Rafferty's Administrators*, 30 N. J. Eq. 260; *Tyler v. Larimore*, 19 Mo. App. 445; *Buckingham v. Fitch*, 18 Mo. App. 91. (5) Interpleader has not alleged and proved "where he made a

contract for an interest in plaintiff's ticket (which drew the $2,500 prize), and that by the laws of that place it was authorized and valid." *Thatcher v. Morris*, 1 Kern. (N. Y.) 137. He alleges that the contract was made in Louisiana, and was therefore legal according to 46 Mo. App. *supra;* but the evidence shows that it was made in Missouri, and therefore illegal. *Kitchen v. Greenbaum*, 61 Mo. 110. The case at bar is on all fours with *Kitchen v. Greenbaum*, which is approved in *Scudder v. Atwood*, 55 Mo. App. 522, and cases cited. (6) Plaintiff recovered judgment below for one seventh only, when the pretended agreement with the banker was that three sevenths should be placed to his credit. But that agreement was of no legal effect. It was executory, and will not be enforced. 1 Tiedeman, Eq. Juris., sec. 227, notes 1, 2, and 3, and cases cited. It would not have been executed till the money was actually paid to interpleader. 30 N. J. Eq. 260, *supra.* Such agreement was without consideration. *Swaggard v. Hancock*, 25 Mo. App. 607, and cases cited; *Gwinn v. Simes*, 61 Mo. 338. A moral obligation without a previous legal obligation to support it will not support an express promise. *Musick v. Dodson*, 76 Mo. 627; *Harrison v. McGuire*, 18 Mo. App. 517. (7) Had Roselle given his note or check to interpleader it would not have constituted payment nor amount to an appropriation of the fund had it been actually in bank to the credit of plaintiff. *State ex rel. v. Wagner*, 47 Mo. App. 438, and cases cited; *Dickinson v. Coates*, 79 Mo. 250. It is only payment when paid. *Appleton v. Kennon*, 19 Mo. 641; *Block v. Dorman*, 51 Mo. 32. (8) Even an order by check, much less an oral one, on the bank, had the fund been actually collected and on deposit to plaintiff's credit, would have been revocable by plaintiff. *Bank v. Bank*, 58 Mo. App. 17. Payment by check is not favored by the law. *Montgomery*

*Co. v. Auchly*, 103 Mo. 506. (9) The licensee of a lottery franchise has no such vested right therein as will prevent the licensor from taking it away at will. *Stone v. State,* 101 U. S. 814; Cooley, Const. Lim., p. or sec. 596. (10) The direction of plaintiff to banker to collect the money, and when collected to pay one seventh to interpleader by deposit to his credit or otherwise, did not pass any interest, legal or equitable, to interpleader. 1 Am. Encyclopedia of Law, p. 839, note 1, and p. 840, note 1, and authorities cited.

*Morton Jourdan* for respondents.

(1) It is evident from the reading of the opinion of the court in *Roselle v. Bank*, 119 Mo. 84, that the matters of difference between plaintiff and the interpleader are *res adjudicata*, and especially is this true when the answer of the defendant bank and the interplea of the respondents are read. They contain the same facts and are supported by the same evidence. *Given v. Thompson*, 110 Mo. 432. (2) In this case the course of the trial court was clearly indicated by this court. *Galbreath v. Rogers*, 45 Mo. App. 424. (3) And the cause has been retried in strict conformity with that course. *Galbreath v. Newton*, 45 Mo. App. 312. (4) The judgments here were against the same party, and it can not avail plaintiff to say that in one case the contest was with the bank and in the other with the interpleaders. *Nave v. Adams*, 107 Mo. 414. (5) The facts disclosed by all the testimony are that some fifteen parties residing at Norborne, Missouri, deposited with one Tassaro $1 each with which he, for them, was to purchase an equal number of fractional tickets in the Louisiana state lottery; that he sent the money by express to New Orleans, Louisiana, and received in due time from said lottery company by

express the tickets ordered. That the tickets were therefore purchased at New Orleans, in the state of Louisiana and not in Missouri, there can be no question. The Louisiana state lottery was duly incorporated and the sale of its tickets made legal by the laws of Louisiana. Acts of Louisiana, 1868, p. 24. (6) The sale then of lottery tickets in that state to citizens of this state was entirely legal, and not in violation of the laws of this state. *Hanson v. Hatch*, 46 Mo. App. 332; *State v. Shaffer*, 89 Mo. 271; *State v. Wingfield*, 22 S. W. Rep. (Mo.) 363; *McIntyre v. Parks*, 3 Metcalf (Mass.), 207; *Kentucky v. Bosaford*, 6 Hill (N.Y.), 526; *Case v. Riker*, 10 Vt. 482; *Kling v. Fries*, 33 Mich. 275; *Jameson v. Gregory*, 4 Met. 363; *Holman v. Johnson*, Cowper, 341; *Sortwell v. Hughes*, 1 Curtis, 244; *Pellecat v. Angel*, 2 Cromp., Mus. & Ros. 311; *Antione v. Smith*, 40 La. Ann. 560; *Greenwood v. Curtis*, 6 Mass. 358; *Com. v. Aves*, 19 Pick. 215. (7) When the draft was received, plaintiff divided it equally into sevenths, and with a written memorandum, signed by himself, indorsed and delivered the draft to defendant, with specific instructions as to the disposition of the proceeds. Under these facts no question exists as to the contract having been executed. This being true, the judgment of the trial court protecting the results will be affirmed. *Hanson v. Hatch*, 46 Mo. App. 332; *Cahn v. Kensler*, 34 Fed. Rep. 472; *Kentucky v. Bosaford*, 6 Hill (N. Y.), 526; *Martin v. Richardson*, 21 S. W. Rep. (Ky.) 1039; *Stix v. Matthews*, 63 Mo. 37; *McIntyre v. Parks*, 3 Met. (Mass.) 207; *Jameson v. Gregory*, 4 Met. (Ky.) 370; *Antoine v. Smith*, 40 La. Ann. 560; *Roach v. Type Foundry*, 21 Mo. App. 118; *McGrow v. Hamlin*, 29 Mich. 476; *Faikney v. Reynous*, 4 Burrows, 2069; *Ex parte Bulmer*, 13 Vesey, 316. See, also, *Keyes v. Bank*, 52 Mo. App. 323. (8) Plaintiff will not be permitted or be heard to say that the con-

tract of which he is the beneficiary, in which he is the principal participant, one formed at his special instance and urgent solicitation, is illegal and against public policy, in order that he may be enabled to embezzle and appropriate the proceeds of the draft in which he has no other interest than one seventh. *Hanson v. Hatch*, 46 Mo. App. 332; *Martin v. Richardson*, 21 S. W. Rep. 1039; *Armstrong v. Toller*, 11 Wheat. 258; *Catts v. Phalen*, 2 How. 336; *Holman v. Johnson*, Cowper, 341; *Bank v. Bank*, 16 Wall. 483; *McBlair v. Gibbs*, 17 How. (U. S.) 232; *Brooks v. Martin*, 2 Wall. 70; *Warren v. Hewitt*, 45 Ga. 501.

BARCLAY, J.—The original action was begun by plaintiff, Mr. Roselle, to recover of the Farmers Bank of Norborne the proceeds of a draft drawn to plaintiff's order, indorsed by him to the bank, and collected by the latter, on which account he claimed that the bank owed him the amount of the proceeds, $2,518.69, with interest, etc.

The answer of the bank was, in substance, a cross bill in the nature of a bill of interpleader, asserting that it held the proceeds of the draft as a trust fund for plaintiff and certain other named persons, claimants, whom it prayed might be made parties to the action in order to have their several interests ascertained. The answer gave a history of the transaction, hereafter recited, and brought the fund into court for disposal. Plaintiff replied; and upon a hearing of these pleadings, the court entered a decree, directing the bank to pay the fund into court, and thereupon be discharged from further liability; and it ordered the parties named in the answer as claimants to present their respective claims to any part of the fund within a given time; and to these claims plaintiff was then to plead within a

named period.    No appeal was taken from that decree.

The claimants thereafter filed "interpleas" for parts of the fund as directed by the court.    These pleadings were statements of the grounds of their respective claims thereto.

Plaintiff insisted that he was entitled to the whole fund.    Mr. Beckemeir, respondent in the appeal now before this division, claimed (and ultimately, after a trial, obtained a finding for) one seventh of the fund. From a judgment based on that finding, plaintiff appealed, after an unsuccessful motion for new trial.

The case has been in the supreme court before, and its general outlines appear in the report of that hearing. *Roselle v. Bank* (1893) 119 Mo. 84 (24 S. W. Rep. 744).    After the remand, the interpleader bank paid the fund into court in accordance with the first decree above indicated, and was then discharged, leaving the rival claimants a clear field to litigate their claims to the fund.    The result of the last trial was the finding in favor of Beckemeir, and a similar one in favor of McAuliffe, another claimant.

Mr. Beckemeir first filed his claim, which plaintiff answered.    Then the former replied.    The general purpose of these pleadings will sufficiently appear later.

The cause was heard by the court without a jury. The main facts on which the trial court acted are well established.

In 1890 the claimants, together with others (in all 18 or 20 persons) bought a number of tickets (or fractional parts of whole tickets) in a lottery of the Louisiana lottery company.    Each person paid one dollar to Mr. Tassaro, of Norborne, Mo.; he forwarded the money to New Orleans by express and there bought the tickets which were returned to him at Norborne about December 10, 1890.    A one-twentieth ticket was thus obtained for each purchaser.    Several of those who had

bought these tickets took them individually. But a small group of the ticket-holders mutually agreed to hold their lots in the drawing jointly and to divide equally any winnings of any of their club tickets. This agreement was made at Norborne, after the tickets reached there.

The statement of plaintiff's counsel in this court argues that the "club" so formed consisted of five. But the trial court found (and we think there was ample evidence) that the club consisted of seven persons, viz: Long, McAuliffe, Beckemeir, McCuistion, Smith, Tassaro, and the plaintiff.

Six of the tickets were left in the custody of Tassaro, who had received them; the other ticket plaintiff took possession of. But all the members of the "club" were informed of the numbers of all the tickets in the venture, and each ticket was identified as that of some particular purchaser among them. There was testimony that the suggestion of this kind of joint holding came from the plaintiff, Roselle.

After the drawing at New Orleans in December, it was learned that the ticket held by plaintiff had won a prize of $2,500, and two other tickets in the club had won smaller prizes, amounting to $25: These two tickets were then delivered to plaintiff, Roselle, who sent them (with his own) to New Orleans and obtained therefor a single draft on a firm of New York brokers. The draft was drawn by the Louisiana National Bank to the order of Roselle. When it reached Norborne in January, 1891, plaintiff in company with Beckemeir and Tassaro took the draft to the Farmers Bank for the purpose of having it cashed. Mr. Mehan, the cashier, agreed to take it for collection only. It was then and there agreed between the cashier, Beckemeir, Tassaro and plaintiff, that the bank should collect the money on the draft and place three-sevenths of it to the credit of

plaintiff, Roselle, one-seventh to the credit of Tassaro, one-seventh to the credit of Long and two-sevenths to the credit of Beckemeir. The three-sevenths, thus directed to be paid to Roselle, included the two shares (of one-seventh each) which would have been due to McAuliffe and Smith (as well as one-seventh due to himself, Roselle) according to the original club agreement. But plaintiff did not receive, or then agree to receive, those shares for McAuliffe or Smith. On the contrary, he declared at that interview (and repeated to Smith and McAuliffe immediately afterward) that if they got anything it would have to be by law.

A written memorandum was made (on the occasion of the meeting at the bank) showing the specific sum of proceeds to be placed to the credit of each of said parties by the bank, as above recited. The memorandum was signed by no one, but was handed to the cashier who assented to it. He received the draft at the same time, plaintiff indorsing it in blank and delivering it to him. The bank collected the proceeds in New York city through the usual commercial channels. When the bank received the draft, it was agreed by all concerned that its compensation for making the collection should be three dollars. The amount of the net proceeds paid into court by the bank was $2,518.69, the correctness of which is not questioned. The finding for Beckemeir was for $341.46, somewhat less than one-seventh of the sum paid into court. Presumably the latter sum was reduced by some allowance in favor of the bank. At all events, as Beckemeir makes no objection to the finding, we need not inquire whether it is sufficiently large.

A day or two after the agreement for the collection, plaintiff notified the bank to place the whole proceeds of the draft to the credit of his wife, and he demanded the same thing again when the collection had been

made.    The bank declined to comply with these demands, unless protected by court orders on the subject.

The claimants offered evidence tending to show that the Louisiana lottery was legally authorized by the laws of Louisiana to have and conduct in that state the lottery in which these tickets were issued.

The plaintiff did not appear as a witness at the trial, and the facts of the case are practically admitted to be as above.

1.    The chief contention of plaintiff is that the result in the trial court is not in harmony with the Missouri law in regard to lotteries, especially the following section of the organic law.

"The General Assembly shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery, in this state; and all acts or parts of acts heretofore passed by the Legislature of this State, authorizing a lottery or lotteries, and all acts amendatory thereof or supplemental thereto, are hereby avoided."    Const. 1875, art. 14, sec. 10.

Certain statutes in force in 1890 on this topic have also an important bearing, and should be noted:

Sec. 3832.    "If any person shall make or establish, or aid or assist in making or establishing, any lottery, gift enterprise, policy or scheme of drawing in the nature of a lottery as a business or avocation in this state, or shall advertise or make public, or cause to be advertised or made public, by means of any newspaper, pamphlet, circular, or other written or printed notice thereof, printed or circulated in this state, any such lottery, gift enterprise, policy or scheme or drawing in the nature of a lottery, whether the same is being or is to be conducted, held or drawn within or

without this state, he shall be deemed guilty of a felony, and, upon conviction, shall be punished by imprisonment in the penitentiary for not less than two nor more than five years, or by imprisonment in the county jail or work house for not less than six nor more than twelve months."

Sec. 3833. "Any person who shall sell or expose to sale, or cause to be sold or exposed to sale, or shall keep on hand for the purpose of sale, or shall advertise or cause to be advertised for sale, or who shall print or publish such advertisement, or shall aid or assist, or be in any wise concerned in the sale or exposure to sale of any lottery ticket or tickets, or any share or part of any lottery ticket in any lottery, or device in the nature of a lottery, within this state or elsewhere, and any person who shall advertise or cause to be advertised the drawing of any scheme in any lottery, or shall print or publish such advertisement, and shall be convicted thereof in any court of competent jurisdiction, shall, for each and every such offense, forfeit and pay a sum not exceeding one thousand dollars."

Plaintiff's learned counsel argue that the scheme or agreement for sharing the prizes, drawn by tickets of members of the club, was a violation of the constitution and of the laws enacted in pursuance thereof, and therefore that the finding in favor of Beckemeir can not be maintained as to any part of the proceeds of those prizes, or of the draft.

Whatever view may be entertained of the legality of that scheme, the finding for Beckemeir can be otherwise supported.

The agreement between the bank (by its cashier) and plaintiff, Beckemeir and Tassaro, for the collection of the draft and the distribution to each of those parties of a specific sum from the proceeds, impressed a trust on those proceeds (when they came into the custody of

the bank) for the benefit of the parties named. That agreement was legal and valid in itself. So far as it bound the bank to account to Beckemeir for that portion of the proceeds of collection appropriated to him by the agreement, it was founded on a valuable consideration. *McKee v. Lamon* (1895) 159 U. S. 317. As a declaration of trust as to the proceeds, it could not be afterward revoked by the plaintiff (as to Beckemeir's interest) without the latter's consent. Beckemeir's claim to the fund, thus apportioned to him, does not depend on the antecedent scheme or dealing touching the formation of the "club," nor is his claim subject to be invalidated by any taint of illegality that may be supposed to rest upon that scheme. He is entitled to share in the proceeds of the draft by virtue of the lawful agreement for collection to which he was a party. The facts bring him within the protection of a recognized principle that a party seeking a recovery can not be defeated on account of the illegality of his prior conduct, when he can make out his case otherwise than through the medium of an illegal transaction. Pollock, Contract (4th ed.), *p. 332; Leake, Contracts (1st ed.), p. 774.

The effect of the agreement with the bank was to render the bank accountable to Beckemeir for the part of the funds assigned to him by that agreement. Plaintiff could not, in that state of the case, re-invest himself with title to the entire proceeds of the draft (and so cut out Beckemeir's rights under the agreement) by merely showing that the agreement was the outgrowth of a prior illegal scheme in which plaintiff himself knowingly participated. Plaintiff's attempt to undo the arrangement with the bank would be blocked by the operation of the general rule that courts of justice will usually leave those who have engaged in illegal dealings to work out their own equities.

2. It was claimed at the trial that there was a failure of proof of the allegation in the "interplea" of Beckemeir that the club tickets out of which his interest in the money was derived were a joint purchase in the state of Louisiana. We find it unnecessary to go into that matter. In the view above taken of the case, it is unimportant where the purchase of the lottery tickets is held to have occurred; and the trial ruling, even if subject to the criticism made by plaintiff's counsel, was therefore harmless and no ground for reversal. R. S. 1889, sec. 2303.

3. Both parties in the circuit court treated the issue involved on this appeal as one in equity, and we have done so too, as parties are generally held bound on appeal by the positions they have taken in the trial court. So it is not needful to review the instructions asked by plaintiff. The conclusion we announce is based on our own review of the facts in evidence.

The plaintiff's appeal against the finding in favor of Beckemeir is groundless, and that finding should be affirmed, at the costs of plaintiff. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.