# The Blakeslee Manufacturing Co. *v.* Robert W. Hilton et al., as the Hilton Chemical Co., Appellants.

*Contract—Time of delivery—Warranty.*

A statement that goods purchased " could be delivered promptly " does not constitute an express warranty as to time of delivery; the contract only requires delivery in a reasonable time.

*Sale—Delay in delivery—Measure of damages.*

In the present case a failure in delivery would impose a duty on the vendee to replace the order elsewhere. A vendee, under such circumstances, may not accept the article after long delay and set off the damages caused by such delay.

*Foreign corporation—Interstate commerce.*

He who buys and keeps valuable property and seeks to pay therefor by alleging the violation of a statute on the part of the vendor, ought to set forth his defense with certainty.

A foreign corporation, engaged in strictly interstate commerce, may advertise its goods, take orders, make contracts of sale respecting same and ship them to customers in this state without violating the Act of April 22, 1874, P. L. 108.

*Sale—Delivery f. o. b.—Responsibility for delay in transportation.*

Where a contract for sale of goods obliges the vendor to deliver f. o. b. at Duquoin, Illinois, the common carrier at the place of shipment becomes the vendee's agent and is answerable for the damages, if any result, from needless delay in transporting the goods to vendee in Pennsylvania.

*Vendor and vendee—Shipment of goods—Misdirection—Shipper's responsibility.*

Goods directed to be shipped to " Newton Station, McKean Co., Pa., via. or on B., R. & P. Ry." were shipped marked Newtown Station, McKean Co., Pa. and went first to another place in Penna. known as Newtown and its arrival was thereby delayed. *Held,* That an affidavit alleging misdirection was insufficient to shift the burden of delivery from the carrier to the shipper, it not being alleged that the Newtown, where the goods first went, was in McKean Co.

Argued April 29, 1897.    Appeal, No. 11, Feb. T., 1897, by defendants from judgment of C. P. McKean Co., Feb. T., 1896, No. 39, for want of a sufficient affidavit of defense. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.    Affirmed.

Assumpsit for goods sold and delivered.    Before MORRISON, J.

The facts appear from the following extract of the opinion of the court below and opinion of Superior Court:

This is an action in assumpsit, brought by the Blakeslee Manufacturing Company, a corporation organized and doing business under the laws of the state of Illinois, to recover from the defendant the price and value of one steam pump, alleged to have been sold and delivered free on board cars at Duquoin, in the state of Illinois. The plaintiff, in the claim filed, states the price of the pump to be $350, and the additional sum of $10.65, for freight prepaid on the same, which is to be repaid by the defendants.

The affidavit of defense admits the receipt of the pump and the payment of the freight, and does not dispute the price and value, and does not aver that the defendants refused to receive the property, nor that they ever offered to return the same. The first ground of defense attempted to be set up is that there was an express warranty that the pump would be shipped and delivered to the defendants within the time mentioned in the affidavits. Upon this question the affidavit states: " That at the time the pump was ordered he stated to Eugene McElwaine, agent for the plaintiff company, the condition in which the factory was, that it was about completed, and would very shortly be in running order, and that it was very important to said Hilton Chemical Co. that the said pump should be promptly delivered, and then and there the said Eugene McElwaine, as agent for the Blakeslee Manufacturing Co., represented to the deponent that the said pump would be delivered promptly, that the same was in stock at the works of the company in Duquoin, Illinois, and could be shipped at once upon receipt of order, and that relying upon this statement made by the said agent, as aforesaid, he gave an order for the pump, and that thereby and by reason of the promises and undertaking of the said Eugene McElwaine, there was an express promise, covenant and warranty on the part of the plaintiff that the said pump should be delivered promptly and in time to be used for the purpose for which it was ordered and for which the same was desired."

The affidavit then states in substance that the defendants believed the pump would be delivered within ten days or two weeks from the date of ordering, but it was not, in fact, delivered until six weeks or two months, and that by such delay the

defendants suffered damages equal or greater than the value of the pump.

*Error assigned* was entry of judgment for want of a sufficient affidavit of defense.

*R. L. Edgett* of *Berry & Edgett,* for appellant.—Time of delivery is deemed to be of the essence of the contract in law: Voorhees v. DeMeyer, 3 Barb. (N. Y.) 37; Wilson v. Roots, 119 Ill. 379; Carter v. Phillips, 144 Mass. 100.

The buyer will also have a right of action against the seller for damages for failure to deliver: Story on Sales (4th ed.), sec. 310; Phillips v. Taylor, 49 N. Y. Super. Ct. 318.

The failure to fulfill a contract within a certain time may become a good ground of defense: Endlich on Affidavit of Defense, p. 417, sec. 526.

The seller is liable for any loss resulting from his failure to follow shipping directions: Wheelhouse v. Parr, 141 Mass. 593. Dwight v. Eckert, 117 Pa. 490.

When no time is specified for a delivery, a reasonable time is inferred: Benj. on Sales (6th Am. ed.), sec. 683.

What is a reasonable time depends upon the facts and circumstances of each particular case and is usually a question for the jury: 21 Am. & Eng. Ency. of Law, 531, note 2.

Where a foreign corporation does not comply with the second section of the act, its business transactions are illegal and all contracts pertaining to it are unlawful: Trust Co. v. McCann & Frazer Co., 6 Dist. Rep. 25.

An affidavit of defense is sufficient if it is set forth in words or by necessary inference therefrom, the indispensable elements of a good defense: Selden v. Neemes, 43 Pa. 421; Thompson v. Clark, 56 Pa. 33; McPherson v. Bank, 96 Pa. 135; Hunter v. Reilly, 36 Pa. 509.

*Thomas F. Richmond,* for appellee.—If time was of the essence of the contract between the parties, and the defendants were not bound to accept the pump when not delivered within the time specified, they cannot now avail themselves of that ground of defense: McKay v. McKenna, 173 Pa. 581.

When the pump was delivered to the carrier at Duquoin, Ill.,

for the purpose of transportation, the duty of the plaintiff was performed and the transaction was complete: Com. v. Fleming, 130 Pa. 138; Bacharach & Co. v. Chester Freight Line, 133 Pa. 414; Railroad Co. v. Wireman, 88 Pa. 264.

And this even if it had been shipped c. o. d.: Com. v. Fleming, 130 Pa. 138.

As long ago as 1889 the Supreme Court held, " that a foreign corporation can contract with a citizen of this state and enforce the contract by suit in the courts has never been controverted: " Leasure v. Life Ins. Co., 91 Pa. 491.

The courts of many states have recognized the right of foreign corporations to engage in interstate commerce without interference: Gunn v. Sewing Machine Co., 57 Ark. 24; Murphy Varnish Co. v. Connell, 32 N. Y. Supp. 492; Novelty Mfg. Co. v. Connell, 34 N. Y. Supp. 717; Tallapoosa Lumber Co. v. Holbert, 39 N. Y. Supp. 432; American Starch Co. v. Bateman, 22 S. W. Rep. 771; Hardy v. Tomoor-Holdy Co., 3 Ohio Nisi Prius, 43; Fairbanks v. MacLeod, 45 Pac. Rep. (Col.) 282.

OPINION BY WICKHAM, J., July 23, 1897:

It is averred, in the plaintiff's statement of claim, that the contract for the pump, which gave rise to this action, was made on or about April 3, 1895; that the pump was to be delivered " free on board cars at Duquoin in the state of Illinois," that it was so delivered on or about April 16, 1895, properly marked, and on the same day the bill of lading was mailed to the defendants, that on or about May 25, 1895, it was actually received and accepted by the defendants and at the time suit was brought was in their possession and use.

No one of the above allegations is fully denied, even by implication, in the affidavit of defense, hence the truth of all must be deemed admitted. The argumentative attempt made, in the affidavit, to create the impression that the place of delivery was to be in this state, instead of in Illinois, counts for nothing. If this were the fact, it should have been squarely averred. But the defendants allege, that there was unreasonable delay, in delivery, whereby they suffered pecuniary injury. As they admit that ten days to two weeks would be a reasonable time, and fail to deny that the pump was delivered at Duquoin, the place agreed on, in thirteen days after the giving of the order, as set

forth in the plaintiff's statement, we fail to see any default, in this respect, on the part of the plaintiff. The common carrier at Duquoin, to whom the delivery was made, became the defendant's agent and is answerable for the damages, if any resulted, from needless delay in transportation.

It is alleged further, however, that the delay occurred because of the plaintiff's negligent disregard of the shipping directions given it by the defendants. According to the affidavit of defense the pump was shipped or billed to "Newtown Station, McKean County, Pennsylvania," instead of "Newton Station, McKean County, Pennsylvania, via or on B., R. & P. Ry." as directed. It went first to another place in Pennsylvania, known as "Newtown," and its arrival at the defendants' factory was thus delayed. The affidavit fails to state, that there was in McKean county any place bearing the name of Newtown or Newtown station, and we therefore may conclude that Newtown was in some other county. This being the case, it follows that the delay was the fault of the carrier, the defendants' own agent, who, seeing from the marks and shipping directions that the Newtown station mentioned was in McKean county should have known, by the exercise of the most ordinary intelligence, that Newtown station, McKean county, meant Newton station, McKean county, instead of Newtown in some other part of Pennsylvania.

We may observe that, at the most, the contract only required delivery in a reasonable time. The allegation, contained in the affidavit of defense, regarding the time of delivery, is word for word as follows: "The said Eugene McElwaine as agent for the Blakeslee Manufacturing Company represented to the deponent that said pump could be delivered promptly, that the same was in stock at the works of the company in Duquoin, Illinois, and could be shipped at once upon receipt of order." All else that is said on the subject, in the affidavit, is only by way of embellishing this text. The agent did not say that the pump would be shipped promptly or at once, but that it could be so shipped. This language, no matter what the defendants understood or believed, does not sustain their theory of an express warranty as to the time of delivery.

But, conceding that the place of delivery was to be in Pennsylvania, that time was of the essence of the contract, and that

the plaintiff was in default, the duty of the defendants, looking at the circumstances disclosed by the affidavit, was to supply themselves with another pump, from some other source, when the one they ordered from the plaintiff failed to arrive promptly. It was not to be manufactured specially, was not, so far as we can see, of any new or peculiar pattern, and the inference, to be drawn from the affidavit, is that it belonged to a class of goods usually kept in stock. Nowhere is it intimated that one similar, or as fully fit for the purpose intended, could not have been obtained, at once, elsewhere and loss have been thus avoided. For a delay of a little more than a month the defendants claim at least $400. Had the pump been lost for six months, the result, to the plaintiff, of this three hundred and fifty dollar sale might have been unfortunate indeed, provided the defendants' measure of damages were adopted. Such a claim, without something more to base it on than is contained in the affidavit, is so manifestly wrong that it should be disregarded. Only peculiar circumstances would justify it and they are neither alleged nor suggested.

Whether or not the decision in McKay & Company v. Mc-Kenna, 173 Pa. 581, cited for appellee, applies to the present case, need not be decided. There the defendant claimed the right, after having taken into his possession the property bought, to return it and rescind the contract, because of delay in delivery. It was held that, even if the time were of the essence of the contract, the attempt at rescission came too late. Here, however, the defendants claim the right, not to rescind, but to keep the property and set off the damages caused by the delay.

The only other matter of defense, that need be considered, is that the plaintiff, being a corporation of the state of Illinois, failed to comply with the requirements of our Act of April 22, 1874, P. L. 108, which provides in the first section that " No foreign corporation shall do any business in this Commonwealth until it shall have established an office or offices and appointed an agent or agents for the transaction of its business therein ; " and in the second section that " It shall not be lawful for any such corporation to do any business, in this commonwealth, until it shall have filed in the office of the Secretary of the Commonwealth a statement," etc.

It is averred in the affidavit of defense that the pump was

" ordered from the plaintiff company, through its agent, Eugene McElwaine, located at the city of Bradford, county of McKean, and state of Pennsylvania," but, it is not alleged, that Mc-Elwaine was a permanent or resident agent, that he had an office, warehouse, place of business, or stock of goods in Bradford, or that he managed, controlled or used any of the plaintiff's corporate capital or property in Pennsylvania. For aught we know, he may have been a mere soliciting agent, and the use of the word ordered, instead of purchased or bought, in the defendants' statement of the contract made through him, indicates that he was nothing more.

Elsewhere, in the affidavit of defense, it is alleged that the plaintiff " has advertised through its local agent, and by other means, its purpose and intention to transact business within this commonwealth, offering to sell its goods, wares, merchandise and other products to customers residing within this commonwealth, and has as a matter of fact made a large number of sales of its goods, wares, merchandise and other products to residents in the state of Pennsylvania." This allegation is also too indefinite, as it does not appear, by reference or otherwise, who the local agent was, where he was stationed, how he advertised, i. e., orally, after the manner of a commercial traveler, or through the newspapers, or where the goods were stored, kept or delivered. Moreover, so far as the affidavit shows, it may well have been that all the things mentioned were done twenty years ago, or after the bringing of this suit.

He who buys and keeps valuable property and seeks to pay therefor, by alleging the violation of a statute on the part of the vendor, ought to set forth his defense with certainty. All that is here alleged is entirely consistent with the conduct of a foreign corporation, engaged in strictly interstate commerce. It may advertise its goods, take orders, make contracts of sale respecting the same, and ship them to customers in this state. It may also employ agents living in Pennsylvania to go from county to county, from town to town, and from person to person, to secure orders. Or the agent may never go outside of his own county, city or town, thus being, in one sense, a local agent and yet be doing a business which is not and cannot be reached under our act of 1874. In the present case, the affidavit of defense should have stated the facts from which it could be

clearly inferred that the particular contract with which we are concerned was violative of the act. It is not sufficiently alleged, however, that the contract was any part of the business, said to have been transacted by the so-called local agent and who, perhaps, did not have an existence at the time it was made. The defendants' inferences are not sustained by their facts. We will not assume that the plaintiff was a violator of law, when the facts set forth are consistent with the doing of a lawful business or, if they leave the character of the business doubtful. Innocence is to be presumed rather than guilt. The presumption is, too, that the defendants stated their defense as strongly as the facts would warrant and whatever is left for conjecture, instead of helping their case, harms it.

The words "doing any business," as used in the act, should not be construed to mean taking orders or making sales by sample, by agents coming into our state from another, for that purpose. To hold otherwise would make the act offend against the constitution of the United States as imposing unlawful restrictions on interstate commerce: Cooper Mfg. Co. v. Ferguson, 113 U. S. 727; Robbins v. Taxing District of Shelby Co., 120 U. S. 489; Brennan v. City of Titusville, 153 U. S. 289; Harman v. City of Chicago, 147 U. S. 396, and note thereto in Lawyers' Edition, book 37, 216; Pembina Con. Silver Mining & Milling Co. v. Penna., 125 U. S. 181; Coit v. Sutton, 102 Mich. 324; Toledo Commercial Co. v. Glenn Mfg. Co., 11 Ohio Cir. Ct. R. 153.

The above and numerous other decisions of the Supreme Court of the United States and of the highest state tribunals, fully establish the rule that a corporation of one state may send its agents to another to solicit orders for its goods, or contract for the sale thereof, without being embarrassed or obstructed by state requirements as to taking out licenses, filing certificates, establishing resident agencies, or like troublesome or expensive conditions. At the same time it is true, that where a foreign corporation establishes an office for "the use of its officers, stockholders, agents and employees," Pembina Con. Silver Mining & Milling Co., supra, or a branch of its general business in another state, and thus exercises its corporate franchises and powers there, it may be liable to state tax and license laws. So also if it send a stock of goods to another state to be there

vended, and which becomes a part of the common mass of property, it can be taxed thereon, provided there be no unfavorable discrimination on account of the foreign origin of the goods : Robbins v. Taxing District of Shelby County, supra; Welton v. Missouri, 91 U. S. 275.

Only when engaged in strictly interstate or foreign commerce, or employed in the business of the general government, can it claim freedom from such exactions.

The act of 1874 need not be so understood as to render it invalid. The business to which it refers does not include the taking of orders, or contracting for the sale of goods, to be shipped from another state. We know of no decision of our Supreme Court bearing directly on the question before us, but in Toledo Commercial Co. v. Glenn Mfg. Co., supra, the precise point was passed on, under a statute very similar to ours by a court of respectable authority in a sister state. The same construction was given the statute that we feel constrained to put upon our own. Coit v. Sutton, supra, is to the same effect. As to the legal scope of the words " doing of business in this commonwealth," we obtain some light from the decision in Commonwealth v. Standard Oil Co., 101 Pa. 119, where it was held, that the purchase of crude oil in this state and the shipment thereof to other states, to be refined, did not constitute doing business within the meaning of our tax laws. So, in Commonwealth v. American Tobacco Co., 173 Pa. 531, it was decided that the taking orders and selling by sample, by agents of a foreign corporation, did not make it liable for a mercantile tax, under an act of assembly imposing the same on " every person who shall deal in the selling of any goods, wares and merchandise." See also Kilgore v. Smith, 122 Pa. 48, wherein it was said, that one of the objects of the act of 1874 was to bring corporations employing capital in this state and doing business here, within the taxing power of the commonwealth. " It does not appear," said the court, " that this corporation brought any of its capital into this state. Its place of business was in Maryland, its capital if it had any was there. It had contracts with some of its members, residing in Pennsylvania, by which they were to can their fruit and hold the same to be disposed of by the corporation." For these and other reasons

it was held, that the corporation was not subject to the act of 1874.

The Pennsylvania decisions just cited, while not strictly applicable to the case in hand, suggest, in a general way the rule by which we should be governed.

The judgment is affirmed.