# Hertzler *v.* Geigley.

196    419|
f221    ²159|

196  419
d226  261

*Contracts—Illegality—Defense.*

True it is that an illegal contract will not be executed; but when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise express or implied, and the court will not unravel the transaction to discover its origin.

*Contracts—Illegality—Principal and agent—Liquor laws.*

While the law will not enforce an illegal contract, yet if a servant or agent of another has, in the prosecution of an illegal enterprise for his master, received money or other property, belonging to his master, he is bound to turn it over to him and cannot shield himself from liability therefor, upon the ground of the illegality of the original transaction.

An agent who has sold whiskey for his principal and collected the proceeds thereof, cannot make defense against his principal, on the ground that the liquor was sold without a license.

*Principal and agent—Evidence to establish agency.*

It is not correct to say that there is no evidence to establish the fact of agency of the defendant to sell whiskey for the plaintiff, where the quantity of whiskey delivered shows that the defendant could not have bought it for his own use, where the accounts of plaintiff could only be explained by the fact of agency, and two witnesses testify positively that the defendant was agent for plaintiff.

Argued May 15, 1900.   Appeal, No. 146, Jan. T., 1900, by plaintiff, from judgment of C. P. Lancaster Co., June T., 1898, No. 49, on verdict for defendant in case of Kate Hertzler v. George Geigley.   Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and MESTREZAT, JJ.   Reversed.

Assumpsit for money collected by agent.   Before LANDIS, J.
The facts appear by the opinion of the Supreme Court.
The court gave binding instructions for defendants.
Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*B. F. Davis,* with him *S. P. Eby,* for appellant.—We think the evidence sustained the statement or allegata.   The fact

that defendant sold on commission and Hertzler copied defendant's accounts, to ascertain the amount of the sales in connection with the positive testimony of Miles Roth, that he was an agent in selling whiskey for Hertzler, was sufficient we think, to leave that question with the jury. The jury would certainly infer therefrom that he was plaintiff's agent: Bucklin v. Davidson, 155 Pa. 362; Lerch v. Bard, 153 Pa. 573; Hartman v. Pittsburg Incline Plane Co., 159 Pa. 442.

It is an elementary rule of the law of agency, applicable alike in civil and criminal proceedings, that the agent shall not be heard to deny the title of his principal: Com. v. Shober, 3 Pa. Superior Ct. 554.

An agent who has in his hands moneys belonging to his principal, on a closed or terminable account, cannot set up as a defense to an action by the principal for money had and received, the illegality of a part or the whole of the transaction: Mechem on Agency, sec. 526; Brooks v. Martin, 2 Wallace, 70; Peters v. Grim, 149 Pa. 163; Brown v. Duncan, 10 Barnewall & Cresswell, 93.

In the case in hand, it was not necessary to unravel the transactions to ascertain if Mrs. Hertzler had a liquor license after the defendant had her money in his pocket: Fox v. Cash, 11 Pa. 207; Swan v. Scott, 11 S. & R. 155; Oil Creek, etc., R. R. Co. v. Penna. Trans. Co., 83 Pa. 160; Baker v. Lukens, 35 Pa. 146; Shuman v. Shuman, 27 Pa. 90; Gisaf v. Neval, 81 Pa. 354; Adams v. Grey, 154 Pa. 258; Boyd v. American Carbon Black Co., 182 Pa. 206; Northampton County's App., 30 Pa. 305; Wright v. Pipe Line Co., 101 Pa. 204; Elder v. Corr, 9 Pa. Superior Ct. 228.

*A. B. Hassler*, for appellee.—Nowhere has the court decided, that under the statement for money, which a defendant named therein, had collected, the plaintiff could recover for money which the defendant is alleged to owe for goods purchased: Ben Franklin Fire Insurance Co. v. Flynn, 98 Pa. 627; King v. Russell, 149 Pa. 361.

Whenever the law requires a penalty for making a contract, it impliedly forbids parties from making such a contract, and when a contract is prohibited, whether expressly or by implication, it is illegal and cannot be enforced: Holt v. Green, 73

Pa. 198 ; Burkholder v. Beetem, 65 Pa. 496 ; Johnson v. Hulings, 103 Pa. 498 ; Mitchell v. Smith, 1 Binn. 110.

OPINION BY MR. CHIEF JUSTICE GREEN, May 29, 1900 :

The plaintiff's statement of cause of action contains throughout a claim that the defendant was indebted to her for the proceeds of whiskey belonging to her but which he sold for her as her agent. The first clause alleged that the defendant was indebted to her for large quantities of whiskey, which the defendant received from her agent and " sold for plaintiff and received the money or proceeds of said sales from time to time." The second clause alleges " that from about July 20, 1894, to about March 24, 1895, the defendant sold and collected for sales, of plaintiff's whiskey and liquor, the sum of $1,608.75, and from that time on until about August 1, 1897, the sum of $734.06." The third clause charges that defendant " marked down the values of whiskey or liquor he took away from time to time," representing the values of the whiskey he received from her (plaintiff), " and which defendant had agreed to, or was to sell at said prices for the plaintiff as her agent or salesman." The fifth clause states that, " the plaintiff allows the defendant the sum of $250, commission for said sales of said whiskey or liquors, that being the amount or balance he is entitled to receive." Then follows a statement in items of the values of liquor taken away and sold by defendant for the plaintiff, amounting in the aggregate to $2,342.81, " from which is deducted $250 amount of defendant's commissions," leaving a balance due the plaintiff of $2,092.81.

It will be perceived from this analysis of the plaintiff's statement of cause of action, that it is in no sense a bill for goods sold and delivered by plaintiff to defendant, but is exclusively a claim for moneys due by defendant to plaintiff, which were collected from third parties to whom defendant had sold the whiskey as the agent of the plaintiff. On its face, therefore, it is a claim for money due from the defendant as agent, to the plaintiff as principal, collected by him for her and not paid over.

This being the correct legal aspect of the claim, the case is brought within a clear line of decisions, in which it has been held, that the agent could not make defense against the claim on the ground that the sales were illegal, because made with-

out a license, or for, any other cause of illegality.  The author-
ities on this subject are very numerous, and in reality not
controverted.  A very few references will suffice.  The controll-
ing principle is well stated in the opinion of Chief Justice GIB-
SON in the case of Lestapies v. Ingraham, 5 Pa. 71 thus, " True
it is that an illegal contract will not be executed; but when it
has been executed by the parties themselves, and the illegal
object of it has been accomplished, the money or thing which
was the price of it may be a legal consideration between the
parties, for a promise express or implied and the court will not
unravel the transaction to discover its origin."  A very full
and exhaustive discussion of the whole subject is found in the
opinion of Mr. Justice WICKHAM in the case of Com. v. Shober,
3 Pa. Superior Ct. 554.  It was there said, " It is an elemen-
tary rule in the law of agency applicable alike in civil and
criminal proceedings, that the agent shall not be heard to deny
the title of his principal.  This rule is founded on reason, pub-
lic policy and common honesty.  Nor does it matter whether
the goods or money retained or embezzled by the agent, came
to his hands through transactions tainted with illegality.  ' The
contract of the agent to pay the money to his principal is not
immediately connected with the illegal transaction, but it grows
out of the receipt of the money for his principal : ' Story on
Agency, sec. 347.  ' If money has been actually paid to an agent
for the use of his principal, the legality of the action of which
it is the fruit does not affect the right of the principal to re-
cover it. . . . The agent whose liability arises solely from the
fact of having received money for another's use, can have no
pretence to retain it : ' Dunlap's Paley's Agency, 62.  ' While
the law will not enforce an illegal contract, yet if a servant or
agent of another has, in the prosecution of an illegal enter-
prise for his master, received money or other property, belong-
ing to his master, he is bound to turn it over to him and cannot
shield himself from liability therefor, upon the ground of the
illegality of the original transaction : ' Wood on Master and
Servant, sec. 202.  ' An agent who has in his hands money
belonging to his principal, on a closed or terminable account,
cannot set up as a defense to an action by the principal for
money had and received, the illegality of a part or the whole of
the transactions : ' Wharton on Agency, secs. 26, 250 ; Mechem

on Agency, sec. 526 ; 1 Am. & Eng. Ency. of Law (2d ed.), 1088. . . . The rule thus announced by all the leading writers on the subject of agency, as well as by all the authors of text books on criminal law who have touched on the subject, is no longer open to doubt." The same doctrine was again enforced in Elder v. Corr, 9 Pa. Superior Ct. 228. The syllabus of the case is, " A man holding a warehouse certificate for ten barrels of whisky, as collateral security for a debt, sold the collateral for cash. The vendee tortiously converted the property to his own use and refused to return the certificate or pay for the whisky. Held in an action of trespass that defendant could not set up the defense that the owner of the certificate was not a licensed vendor of liquor who had paid a government tax as a wholesale dealer." In the opinion of Judge ORLADY, it was said, " As to the second proposition, that the court will not enforce the contract because it is against public policy, we do not agree with the appellant, in his application of the principle. The decisions are uniform from Seidenbender v. Charles, 4 S. & R. 151, to Phœnix Silk Manufacturing Co. v. Reilly, 187 Pa. 526, that the courts will not aid a party in an action on an immoral or illegal act. But we find no case which holds that a defendant who fraudulently receives property, is protected by the law, and relieved from any liability to return or pay for it or that the plaintiff is limited to the simple action of assumpsit, in recovering its value. A defense of this nature was urged in Commonwealth v. Shober, 3 Pa. Superior Ct. 554, and it was held by this court to be insufficient. See also Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184. We do not think the facts in this case bring it within the prohibition of the state or federal statutes : Rahter v. First Nat. Bank, 92 Pa. 393." It is not necessary to multiply the authorities.

In the present case the facts were that the whiskey was delivered to the defendant by the plaintiff's husband acting as her agent, who had a distillery as well as a revenue license, and it is extremely doubtful to say the least that there was any illegality whatever in the transaction. But, however, that may be, the defendant cannot set up any such defense, even if the want of a license by the plaintiff would have otherwise vitiated the transaction. The learned court below, not at all controverting the foregoing authorities, or the principle they establish,

but fully conceding their correctness, was of opinion they were
not available for the plaintiff, on the ground that there was no
evidence to establish the alleged agency of the defendant for
the plaintiff, and consequently he withdrew the case from the
jury and granted a compulsory nonsuit at the end of the plain-
tiff's testimony. After a careful examination of the whole of
the testimony we are unable to agree with the court upon this
subject. In point of fact the plaintiff did not herself make
any contract or any deliveries to the defendant. The whole
business was transacted on her part by her husband who was act-
ing as his wife's agent in caring for and disposing of the
whiskey in question. He was examined as a witness and he tes-
tified as follows: " Q. Upon what condition did he get the
whiskey? How did he get it and how was he to pay for it, and
was there any commission allowed him? A. Yes, I promised
him that if he would sell fifty barrels I would give him $250
for his share. We had been dealing for a year or so before I
failed. Q. For every fifty barrels he would sell, you would al-
low him $250? A. Yes. Fifty barrels represented $1,500."

Another witness, Miles Roth, who was the distiller at the
distillery was examined and testified thus: " Q. You were the
distiller at the time Mr. Hertzler carried it on? A. Yes, sir.
Q. The time they lived there, were you? A. Yes, sir. Q. Dur-
ing that time did you notice whether since 1894 Mr. Geigley
used to fetch whiskey there? A. Yes, sir. Q. More than
once? A. I don't understand that right. Q. Whether he
took whiskey away from the retail house? A. Yes, he was
an agent for Hertzler. Q. To sell whiskey, was that it? Did
you see Mr. Geigley fetch away whiskey from the distillery
after 1894, after the sheriff's sale? A. Yes. Q. How often
did you see him there about? A. About well probably, perhaps
every two weeks. Sometimes every four weeks. I couldn't
exactly say how often. Sometimes not perhaps for a whole
month. Q. Did you ever measure it out for him when Mr.
Hertzler was not there? A. Yes, sir. Q. How much did he
fetch away as near as you can recollect the time you measured
it out for him? A. Sometimes he fetched away from sixteen
to thirty-five gallons and sometimes not so much."

It is perfectly manifest from a mere inspection of the figures
of the account, and from the testimony as to the frequency

and quantity of the items of whiskey which were obtained by the defendant from Hertzler, that he was not buying the whiskey for his own use, but for the purpose of selling it to others. When both Hertzler and Roth testified that the defendant was acting as an agent in these transactions, it is very clear that they truthfully characterized his position in the matter. There is not the slightest contradiction of the testimony of these witnesses, and their statements are corroborated by the manner in which the account was kept, and the plain indications afforded by the figures, and the mode in which the defendant obtained his supplies of whiskey. Hertzler testified that he did not keep the account of the defendant in the day book, as he kept all his other accounts, but that he would get from the defendant his figures representing the deliveries and the prices, and copy it off in a small book. He said, " The reason I kept Geigley's account in that way I always kept it on his book, and I had the dates and everything marked down. Then I kept my account just temporary in that little book; I took off his account. He has the dates and cash all fixed here, as he fetched them. Q. The sales represented in this book were put down at the time you made them? A. Yes. Always copied off of his account." It is difficult to understand this method of keeping the account of the transactions with the defendant upon the theory that they were direct sales to him at fixed prices, or upon any other theory than that they represented sales made by the defendant for the account of the plaintiff. Such is the tendency of the testimony and when it is accompanied with the positive testimony of two witnesses, who were not contradicted to the fact that the defendant was acting as the agent of the plaintiff in selling the whiskey, it is not correct to say there is no evidence on the record to establish the agency. That question was one of fact, the evidence distinctly supported the allegation of the agency of the defendant and therefore it should have been submitted to the jury for their action.

The assignments of error are sustained.

Judgment reversed and new venire awarded.