STATE OF NORTH DAKOTA, Respondent, v. J. J. ERMATINGER, Appellant.

(231 N. W. 880.)

Opinion filed July 30, 1930.

706

*J. J. Ermatinger,* pro se, for appellant.

*James Morris,* Attorney General, and *Harold D. Shaft,* Assistant Attorney General, for respondent.

BIRDZELL, J. This is an appeal from an order of the district court overruling a demurrer to a complaint. The action is brought for the benefit of the North Dakota Department of State Highways. Aside from formal allegations, the complaint reads:

### III.

"That in the month of August, 1925, the North Dakota State Highway Commission commenced the publication of an official bulletin named 'North Dakota Highway Bulletin;' that said bulletin has been published monthly ever since said date up to the present time; that the publication thereof from its inception to the present time has been an official act upon the part of the North Dakota State Highway Commission and its employees; that the purpose and object thereof has always been and still is to aid and assist the Department of State Highways and the State Highway Commission in the performance of its duties and functions by the publication and dissemination of all forms of highway information to the employees of the State Highway Commission and Department of State Highways and to the general public of the State of North Dakota; that all of the office work connected with said bulletin has been at all times performed by employees of the State Highway Commission as part of the performance of the ordinary and regular duties of their employment; and that the said bulletin, the proceeds and all funds and accounts receivable thereof and all books, records, documents and material of any name, nature or description used in connection therewith are the property of and owned by the Department of State Highways as an administrative department of the State of North Dakota.

### IV.

"That on or about the first day of June, 1925, the defendant was

employed by the State Highway Commission to organize and to serve as editor of said North Dakota Highway Bulletin; that said defendant did enter into said employment and from about the first day of June, 1925, until the first day of May, 1929, the defendant was at all times an employee of the North Dakota State Highway Commission at a regular monthly salary fixed by the Highway Commission and paid by the State of North Dakota and as such had the official duty of acting as editor of the North Dakota Highway Bulletin.

## V.

"That on the first day of May, 1929, the defendant's employment with the Highway Commission and Department of State Highways was terminated.

## VI.

"That at the time of the termination of his said employment, the defendant wrongfully removed from the office of the State Department of Highways all books, records, accounts, material, files and property used in connection with the publication of said North Dakota Highway Bulletin and wrongfully caused to be withdrawn from the First National Bank of Bismarck, North Dakota, and paid to himself the cash on hand to the credit of said North Dakota Highway Bulletin in said bank amounting to the sum of One Hundred Sixty-three Dollars and Seven Cents ($163.07) and said defendant wrongfully withholds from the plaintiff all of said property and all of the proceeds of said bulletin, the exact amount of which is to the plaintiff unknown.

## VII.

"That the publication of said bulletin from its inception to the date of the termination of defendant's employment resulted in a profit to the North Dakota Department of State Highways, the exact amount of which is unknown to the plaintiff but which the plaintiff is informed and verily believes and therefore alleges was in excess of the sum of Two Thousand Dollars ($2,000.00).

## VIII.

"That demand has been made upon said defendant to return all of said property and to render an accounting of the affairs of said North Dakota Highway Bulletin; but that the defendant has failed, neglected and refused to return the same or any part thereof or to render any accounting thereof.

"WHEREFORE, plaintiff prays:

"1. That the defendant be required to render an accounting of the affairs of said North Dakota Highway Bulletin and all his doings in connection therewith and to account for all the proceeds thereof.

"2. That the plaintiff have judgment against the defendant for the amount determined by the Court to be due upon such accounting.

"3. That all books, accounts receivable, records, material and property used in connection with said North Dakota Highway Bulletin be decreed the property of and ordered returned to the plaintiff.

"4. That the plaintiff have its costs and disbursements in this action together with such other and further relief as to the Court may seem just and equitable."

The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action and specified the following reasons:

"(a) That the State Highway Commission, at all times mentioned in the Complaint, was never authorized by law or statute to publish a bulletin or monthly magazine;

"(b) That the State Highway Commission, at all times mentioned in the Complaint, was never authorized by law or statute to engage in the private enterprise or business of printing and publishing a bulletin or magazine for profit;

"(c) That the said Complaint omits and fails to set out, allege or specify that the said State Highway Commission, at any time, by resolution, order or motion did attempt or did actually authorize or direct the publication or issuance of a monthly magazine for profit, or otherwise;

"(d) That the said Complaint omits and fails to set out, allege or specify that the said State Highway Commission, at any time, by resolution, order or motion did attempt to or did actually authorize and

direct any officer or employee to engage in the private enterprise and business of publishing a monthly magazine for profit for and on behalf of the said Commission and for its benefit.

"Second: That allegation No. III of the said Complaint fails and does not state facts sufficient to constitute a cause of action for all the reasons set forth under caption 'First' hereof and the additional reason that the said allegation No. III sets forth no facts but merely states conclusions of law."

The demurrer presents three questions for consideration: (1) Did the state highway commission during any of the period covered by the complaint have lawful authority to publish a bulletin or monthly highway magazine? (2) If the bulletin were published by the state highway commission without authority of law, may the property devoted to that purpose or any income derived therefrom be recovered from the defendant if retained or converted by him to his own use? (3) Are there sufficient allegations of fact charging the publication to have been undertaken by the state highway commission? If the second question requires an affirmative answer, obviously the first question need not be considered; for, if the defendant is chargeable by reason of being an employee regardless of whether or not the publication was an ultra vires undertaking so far as the state highway commission was concerned, any issue now presented regarding the powers of the highway commission should be disregarded. It is an old rule of good pleading that issue should not be tendered upon immaterial matter, and if the defendant is chargeable as an employee regardless of possible limitations upon the powers of the employing board or commission, any issue going to the extent of such power is immaterial.

Considering, then, the second question, the complaint clearly alleges that the defendant was employed by the state highway commission to organize and to serve as editor of the highway bulletin; that he was an employee of the commission with a regular monthly salary and having the official duty of acting as editor and that at the termination of his employment he removed from the office of the department certain property used in connection with the publication of the bulletin and belonging to the department; also, that he withdrew from the bank and withheld from the plaintiff certain moneys which had been credited to the account of the North Dakota Highway Bulletin.

"It is a well-established and salutary doctrine," says 2 Dillon on Municipal Corporations, 5th ed. § 772, "that he who is intrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based upon principals of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well-regulated system of jurisprudence prevails. The law will in no case permit persons who have undertaken a fiduciary character or a charge to change or invert that character by leaving it and acting for themselves in a business in which their character binds them to act for others. The application of the rule may in some instances appear to bear hard upon individuals who have committed no moral wrong; but it is essential to the keeping of all parties filling a fiduciary character to their duty, to preserve the rule in its integrity, and to apply it to every case which justly falls within its principle."

The above statement is preliminary to an expression of the doctrine that officers and directors of corporations, either private or municipal, are not to be permitted to have a private interest which might be contrary to their fiduciary duties. But the expression so clearly delineates the moral principle involved in every relationship where one is called upon to act for others that the statement may well be regarded as a general axiom. Of course, we do not lose sight of the fact that this cause is now before us on demurrer. It is not to be deduced from any of the allegations in the complaint that the highway commission in any way regarded the enterprise as the private enterprise of one of its employees. In fact, the complaint negatives this. If the defendant was employed in such a capacity that his employer imposed upon him the duty of organizing the bulletin and vested him with an authority that would enable him to control its property devoted to that purpose, including its bank account, it is wholly immaterial, we believe, under well established legal principles, whether or not the commission was authorized by law to engage in the enterprise. The duty to be faithful in an employment exists irrespective of the authority to employ and the obligation to account is so scrupulously enforced that the law takes

little cognizance of the source of that for which the employee should account, even of the means through which it came into his hands. Even money that has been paid by a principal to his agent to be used in violation of law and which remains in the hands of the agent may be recovered (see Wassermann v. Sloss, 117 Cal. 425, 38 L.R.A. 176, 59 Am. St. Rep. 209, 49 Pac. 566); or moneys which have come into the hands of the agent as the proceeds of the sale of lottery tickets (Roselle v. Beckemeir, 134 Mo. 380, 35 S. W. 1132); or as the result of the illegal sale of liquor (Hertzler v. Geigley, 196 Pa. 419, 79 Am. St. Rep. 724, 46 Atl. 366).

"As was said by McIlvaine, J., in Norton v. Blinn, 39 Ohio St. 145, 149; 'It is contrary to public policy and good morals, to permit employees, agents or servants to seize or retain property of their principal, although it may be employed in illegal business and under their control. No consideration of public policy can justify a lowering of the standard of moral honesty required of persons in these relations.' " Woodward, Quasi Contr. § 148.

However sound this principle, there yet may well be some hesitancy in applying it where to do so would be to lend the aid of the law to advance a nefarious business; but if it has sufficient force to permit a recovery by the employer at all in such cases, no reason can be assigned why it should not apply where the defense relied upon by the employee is merely that the business of the employer was ultra vires. To permit this defense in such a case would be to allow ultra vires to be invoked, not to protect the municipality or the state and taxpayers against the consequences of an unauthorized undertaking but to effect a positive injury. It would convert the defense of ultra vires into a justification for wrongful conversion. Both sound public policy and unquestioned legal authority require an affirmative answer to the second question. Therefore, the first question need not be answered.

To the contention that it is not sufficiently alleged that the publication of the bulletin was an undertaking of the state highway commission, we think reference to allegations in paragraph 3 is alone sufficient answer. The allegations are that in the month of August, 1925, the North Dakota state highway commission commenced the publication of an official bulletin named "North Dakota Highway Bulletin" and that from the inception to the present time the publication has been an

official act upon the part of the North Dakota state highway commission and its employees. These are clearly allegations of ultimate fact. The pleader is not required to set forth the evidence by which such fact is to be proved.

The order is affirmed.

BURKE, Ch. J., and NUESSLE, BURR and CHRISTIANSON, JJ., concur.